12852

STEWART-JONES CO. v. HANKINS *ET AL.*
(152 S. E., 480)

September, 1928.

236

238

240

242

244

248

250

252

*Messrs. Dunlap & Dunlap,* and *Hart & Moss,* for appellant,

*Mr. William J. Cherry,* for respondents,

March 12, 1930.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action by the plaintiff, Stewart-Jones Company, a corporation, against the defendants, Mrs. M. B. Hankins, D. B. Hankins, and R. L. Shehan, was commenced in the Court of Common Pleas for York County, May 8, 1925, for the recovery of a certain lot of land in the city of Rock Hill, together with rents and profits for the use of the same. Upon issues being joined, the cause was referred to J. A. Marion, Esq., as Special Referee, to take the testimony and pass upon the issues involved. The Referee's report contains a full and clear statement of the case, and should be incorporated in the report of the case. There are several defenses set up in the defendants' answer, but the Referee did not consider it necessary to consider but one of the defenses relied upon by the defendants; namely, that before the commencement of this action the plaintiff brought an action in the

same Court (Court of Common Pleas for York County) against the same defendants named in this action, on substantially the same allegations as are set forth in the complaint in this action, for recovery of possession of the same lot of land involved in this action; that said former action, having been heard on the merits, was dismissed for failure of proof by the plaintiff of the allegations of the complaint; and that the action now before the Court was commenced by the plaintiff without the payment of the costs in the said former action, which was a condition precedent to its right to bring this action. The Referee sustained this defense, and his finding and holding was confirmed by the Circuit Judge, Hon. J. K. Henry, who heard the case on the report of the Referee. In our opinion, the conclusion reached by the Circuit Judge is well supported by the facts and law of the case.

Therefore, the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and STABLER concur.

MR. JUSTICE COTHRAN (dissenting) : This is a second action for the recovery of real estate ( ?) by the same plaintiff against the same defendants. The defense of the defendant Mrs. M. B. Hankins, which was sustained by both the Special Referee and the Circuit Judge, his Honor, Judge Henry, was that the costs of the first action had not been paid before the commencement of the second, as required, as a condition precedent, by Section 317, subdivision 2, of the Code of Civil Procedure; it was commenced on May 8, 1925.

The Section referred to is as follows: "The plaintiff in all actions for recovery of real property, or the recovery of the possession thereof, is hereby limited to two actions for the same, and no more: Provided, That the costs of the first action be first paid, and the second action be brought within two years from the rendition of the verdict or judgment in the first action, or from the granting of a nonsuit or discontinuance therein."

A somewhat detailed statement of the circumstances of the controversy appears essential to an apprehension and decision of the issue involved:

Prior to the year 1922, the defendant D. B. Hankins was an employee of the plaintiff company, and had been so, and in the complete confidence of the plaintiff, for several years as bookkeeper, in charge of the office work and financial affairs of the company. At some time shortly before August 1, 1922, an audit of his accounts developed the fact that he had misappropriated funds of the company to the extent of something over $10,000. He absconded, and his whereabouts have since been unknown. Early in August, 1922, the plaintiff brought an action against D. B. Hankins for the amount of said defalcation, and, upon affidavits that he had fled the State, procured an attachment which was levied upon a house and lot in the City of Rock Hill, the subject of this action. After his flight from the State, from some point elsewhere, he transmitted to his wife, Mrs. M. B. Hankins, a deed dated August 12, 1922, purporting to convey to her the house and lot referred to. The summons upon him was served by publication. He made default in answering, and on October 19, 1922, the plaintiff took judgment by default against him for the amount sued for. The order for judgment was signed by his Honor, Judge Peurifoy, presiding in the Circuit, at Winnsboro, within the Circuit, but not in the county in which the suit had been commenced. In pursuance of the execution issued upon this judgment, the sheriff of York County advertised and sold the house and lot in November, 1922. At the sale the plaintiff became the purchaser at $500. The bid was complied with, and a deed executed by the sheriff to the plaintiff. The $500 paid by the plaintiff was disbursed by the payment of costs $40.90 and the remittance of the balance $459.10 to the attorneys for the plaintiff. In June, 1923, the plaintiff instituted an ejectment proceeding against Mrs. Hankins and her tenant, Shehan, then in possession of the house and lot, which proved

abortive; the defendants having raised the issue of title, which this Court decided (*Stewart-Jones Co. v. Shehan*, 127 S. C., 451, 121 S. E., 374) ousted the Magistrate of jurisdiction. This decision was rendered February 7, 1924.

The Special Referee finds as follows: "Thereafter in March, 1924, Stewart-Jones Company commenced an action against Mrs. M. B. Hankins to have a deed to the premises made by D. B. Hankins set aside on the ground that the same was without consideration, and was made to hinder, delay and defraud creditors."

He thus refers to it in several places, and at others as an action to recover the possession of real estate, which view the counsel for the appellant seem to take of it.

On July 2, 1924, the plaintiff served an amended complaint making the present defendants parties to the suit. In December, 1924, exactly how does not appear, the matter came up before his Honor, Judge Bonham, who signed an order dismissing the complaint upon the ground that the judgment by default against D. B. Hankins rendered by his Honor, Judge Peurifoy, at Winnsboro was void, and that it was a necessary link in the title of the plaintiff.

Later, it appears that in February, 1925, the plaintiff recovered a judgment against D. B. Hankins, practically a duplicate of the one rendered by his Honor, Judge Peurifoy which was set aside by his Honor, Judge Bonham. Under the execution issued upon this judgment, the house and lot were again levied upon and sold in April, 1925, the plaintiff again becoming the purchaser at the price of $250.

The amount of the bid was paid by the plaintiff to the sheriff under instructions of counsel to pay all costs taxed against the plaintiff and to remit the balance to them, which he did. It appears, however, that there were certain services performed by the Clerk in the action which had been dismissed by Judge Bonham's order for which he might have taxed costs, but did not, and which of course the sheriff did not pay. Plaintiff's counsel, relying upon the belief that they

had paid all costs for which the plaintiff was liable, on May 8, 1925, instituted the present, the second, action, and have been met with the defense that the costs of the first action had not been paid.

In the meantime, that is, between the order of Judge Bonham in December, 1924, dismissing the first action for the reason stated and the commencement of the second action in May, 1925, no judgment had been entered up and no costs had been taxed, other than those paid by the sheriff out of the check transmitted to him by counsel for the plaintiff. As a matter of fact, it was not entered until June 10, 1925, before the counsel for Mrs. Hankins served his answer, and then it appears *with the costs blank*. It was done, as counsel admits, for the purpose of establishing the ground of his defense. With commendable candor he announced to the Referee: "I would like to state in this connection, Mr. Referee, that it was my purpose to make this defense, and I did not see that it was to my best interest to tax these costs, and it was to their interest under the order of Judge Bonham."

It should be remembered that the Clerk said that he had no costs charged against either plaintiff or defendants, but the testimony shows that, *long after the second action was brought* (about two years in fact), counsel for respondents *exhibited to the Clerk certain papers and asked if he would have costs on these papers,* and the Clerk answered that, when these papers were filed and recorded by him, or sealed and enrolled, there would be costs. The second action was brought May 8, 1925. The Clerk's indorsement shows that these papers on which he says he would have costs, and particularly the judgment dismissing the complaint, *were not filed in his office by defendants' counsel until the 10th day of June, 1925, or thirty-two days after the beginning of the second action.* The Clerk had no costs when the second action was brought, for the reason that he had done nothing to earn costs. It is reasonable to suppose that the papers upon which it is now sought to tax costs to defeat this action were

in the hands and custody of respondents' counsel. Certainly, they were not in the hands of appellant's counsel, and the record shows by their entry that they were not in the hands of the Clerk until thirty-two days after the action was brought. Judge Bonham's order is dated December 18, 1924. The record shows that this *order was never lodged in the Clerk's office to be entered as a judgment until the 10th day of June, 1925, or thirty-two days after the second action was brought.* It may be true as a legal proposition that the judgment may be entered and the costs subsequently taxed and inserted by the Clerk, but it cannot be true, either as a legal proposition or in equity, that a paper may be not filed in the office, so that neither the sheriff, appellant's counsel, nor Clerk would know of it and then be delivered to the Clerk, thirty-two days after the commencement of a second action for the purpose of creating costs. The papers creating these costs were lodged for enrollment June 10, 1925, and the answer was served setting up the nonpayment of these costs June 11th, *or the following day thereafter.* How could the Clerk have any costs, when he had recorded no papers, or done any work to entitle him to them?

I think, too, that it is worthy of consideration that the second action was brought upon a cause of action that did not exist at the time that the first action was brought, it having been decided that at that time the plaintiff had no title, the judgment upon which its deed depended having been declared void.

I think that there are several grounds upon which the circuit decree should be reversed:

(1) The action was an equitable action to set aside the deed from the absconded debtor to his wife, and not subject to the limitation prescribed in Section 317 of the Code.

(2) That it was the duty of counsel for the defendant Mrs. Hankins to enter up the judgment under the decree of his Honor, Judge Bonham, and to have the costs taxed; that he is not in a position to invoke the failure of the plaintiff to pay the costs under these circumstances.

(3) That the counsel for the plaintiff exercised the greatest degree of care in complying with the statute, and that his client should not be heavily penalized for an omission due largely to the remissness of counsel for the defendant; that he paid all of the costs that had been taxed at the time he remitted the check for the purchase price upon the second sale.